This is Michael Morges for Appellant. May it please the Court. Although I think the issues were covered adequately in the briefs, I want to focus a little bit more on the issue of the Human Resources Director's role in the grievance procedure and whether that qualifies him as the final decision maker. The trial court below, the district court, was focused in the bifurcated proceedings on hearing the Human Resources Director's role and determined that because one could file a grievance which would culminate in an informal proceeding, perhaps a meeting, before the Human Resources Director, the Human Resources Director, was the decision maker for layoffs. I cited the Lytle case. Mr. Harrell said I don't understand the Lytle case. I think I did. But here, the Human Resources Director is not in what I would say the stream of decision making in the ordinary course of personnel decisions. He's only in the process, as I said in my opening and closing briefs, as an interpreter of the layoff provisions if somebody grieves a decision. If someone doesn't grieve a decision, the Human Resources Director is not part of the decision at all. Here, because of the county's conduct in telling not just the appellant, Ms. Murray, but the other high-ranking Sheriff's Department officials involved who were part of the state case that was mentioned by both parties, was led to believe they were merely laid off. They had no reason at the time of the layoffs until their termination to put together, wait a second, this might be pretextual. This might be retaliation. And so because of the county's conduct, my client, and I assume the others, although they didn't bring First Amendment claims, had no reason to go to the Human Resources Director. The Human Resources Director, for purposes of my client's employment decision, was not part of the decision making process. Counsel, let's assume for the moment that we accept the proposition that the court below sort of confused the concepts of decision-making authority and policy-making authority and sort of got it wrong because of that confusion. And there may be some justification to send the 1983 claim back. What is the theory of that 1983 claim? I ask that because the Sheriff is now out of the case, right? As an individual. As an individual. That's correct. Not as a witness, but as an individual. So what is your theory of liability? Is it perhaps that you might be able to establish that the Board of Supervisors delegated authority to the Sheriff so that he is the policy-making individual and that the Sheriff then pursued these retaliatory layoffs? Is that the theory that you want to pursue? You're asking under Monell what is the theory of liability? Yes, I am. Since the Sheriff is not an individual party anymore any longer? Right. There is evidence in the record, and in fact the trial court did find or at least comment on towards the end of the bifurcated trial, I think at page 22-121 of the record, that the Sheriff had carte blanche in how to achieve and how to meet the $28 million cut in funding and that it was completely up to her. She had virtually unfettered discretion in how to achieve that, and that direction came from the Board, and that's what the Sheriff did. So you're saying because the Board allowed the Sheriff to, they gave her a number and allowed the Sheriff to decide what categories of personnel and that that was a delegation of final policy-making authority with respect to that area? Certainly. It does look like the Board of Supervisors or the County Executive Officer under the regulations has the final authority, but I think we do have some case law that says that can be delegated to someone else. In fact, as a practical matter, it has to be in many instances. You mean it has to be in the sense that someone needs to make the decision? I mean, you can't have the Board of Supervisors running the Fire Department and the Police Department and the Sheriff's Department and whatever else they're running the schools. Someone, as a practical matter, has to be delegated that authority. Here's my response to that, because that is certainly a question I've been thinking about. I think under the Supreme Court's decision in Jett versus Dallas Independent School District, you don't just look at, for instance, the personnel and salary regulation or the municipal code. You also get to look at how did they really run this ship and the, I guess to put it in sort of Fourth Amendment terms, the operational realities or Fourth Amendment employment context, the operational realities. Here, there is evidence that they pretty much washed their hands of it and just said, you do it. I mean, how else would you be able to prove that in the situation where that really does occur as it looks like happened here? Otherwise, you could always just legislate it away, unless that's okay. How does the reversal of the Anderson case affect this case? Affect the 1983? The 1983. I guess it goes, as far as the 1983, I suppose it goes to any potential waiver issues. I mean, there was some discussion about whether my client filed a grievance. By failing to attend the Liberty Interest Hearing. Okay. I think this issue is squarely addressed by the Anderson case. And what Anderson said is no different than what we said in our briefs. It just kind of confirms it or affirms it. You do not have to attend a hearing that is not adequate. It's an inadequate remedy, essentially. Here, if in fact she was terminated for purposes of punishment, the hearing that she is entitled to is completely different. It's a full and fair evidentiary hearing, witnesses, etc. The county was not offering that. Attending that would not achieve that. I'm sorry, go ahead. Please go ahead and finish your answer. The issue of putting the burden on my client of causing some type of speculation that had she attended, what she's already being told, and the record evidence shows she's already being told, no witnesses. This is just an opportunity for you to tell your story. Which is what a Liberty Interest Hearing is. It's not even an opportunity to get your job back. It's just to clear your name so you can move on and go to work someplace else. So she's already being told you're not going to be able to have witnesses. She wasn't told she had done anything wrong. She wasn't even told she had done anything wrong. So what is she going to raise at that hearing? What is she going to say? If at the time, and this is only days, maybe a month after she receives her layoff notice, she thinks this is just a layoff. Does the record show that the discharge in this case was a punitive action, a triggering process, or is that an issue of fact? That's an issue of fact to be determined later. In fact, in Anderson right now, I spoke to the attorney representing the five plaintiffs in Anderson a couple of days ago. And I'm sure Mr. Harrell can speak a little bit more on this. I believe he's counsel below in that proceeding as well. They have trial coming up, I believe in June, on the issue of whether the layoffs were actually a pretext for punitive action. If the layoffs were a pretext for punitive action, then you get into the Government Code Section 3304B, full and fair evidentiary hearing. Who makes that determination in the first instance? Yes, that is a factual question, whether in this case a dismissal, a layoff was punitive. And the eligibility for the administrative hearing seems to hinge on that factual determination. But who makes that factual determination in the first instance? That's what I'm trying to frankly figure out. Well, in this case, in the first instance, I imagine it would be the trial court. But normally what happens is you are handed a notice that says you are being terminated for reasons A, B, and C. You did something wrong. This is for punitive purposes. And punitive, maybe punitive is not the best word to use sometimes. It's basically you did something wrong and we're terminating you or otherwise. That's the language of the statute, isn't it? Yeah, I was just trying to be not so heavy handed with the term punitive. So do we remand for that issue? Yes. On remand, one of the issues the court will need to decide, just as in the Anderson case, is whether the layoff was a pretext for a punitive action, basically, under the Bill of Rights Act. And if it's found that it is, as determined by the trial court, I'm not sure if it's the court sitting, the judge sitting as a trier of fact or a jury, then those rights need to be afforded. Then you can have your administrative hearing. You'll know why you were terminated, etc. Right now, at the time this lawsuit is filed, and the state one as well, the county is doing a good job of saying, no, no, it was just a layoff. It just seems like such an awkward scenario. You get this dismissal notice. You demand an administrative hearing. It's denied. And then you claim it's wrongfully denied because you want to establish that the dismissal was punitive. And so you have to go to court and get a trial of some kind to establish that the purpose of the dismissal was punitive. And if you succeed on that, you then go back to the administrative process and get a full administrative hearing to determine whether the charges have been supported by evidence, termination is warranted under the circumstances. Why would you go back through the administrative process after you get a judgment that it was pretext? Isn't that tantamount to saying, so they violated your rights under POBRA? Why would you go back? Don't you get damages at that point? I like that idea. I mean, it doesn't make sense to me that you would go back at that point. But I suppose one could carry it out in that manner. That we go back, now we get a hearing. Will that happen in reality? Probably not. Well, it doesn't make sense to do that. I mean, if you do prove it was pretext, then you were entitled to the POBRA hearing and you were denied that. So then you get damages for that. Okay. I don't know. It's your case, not mine. I think I'm taking my cues somewhat from what happened in the Anderson matter and the way that the court in Anderson wrote it. This is kind of the road map, and I'm deferring to the three appellate justices' view of how the case should go. But I suppose it's much more efficient to say you win. It was a pretext. As you were asking some questions before about final decision maker, and I just want to clarify or ask, so under Monell, is Hutchins required to be a final decision maker and a final policy maker? I think in this case, this may be, under the delegation theory, the decision maker and policy maker would need to be one and the same in this case. Under the delegation theory? Well, Judge Lopez asked me the theory of liability under Monell. That policymaking authority was delegated. So under that scenario, the final decision maker and final policy maker would be one person, and it would be the sheriff. I didn't see anything in the county charter ordinances or PSR that grants or delegates policymaking authority to Hutchins. What evidence are you relying on? Her testimony, which the trial court commented on to a fair degree, that she had carte blanche to carry this out however she saw fit. Is that what you're relying on, her testimony? And the testimony of, I think, Assistant Sheriff or Under Sheriff Scott, that the CEO did not need to approve anything. And so should we decide the policymaker question now or remand that? Well, it is a question of law, but I think that some facts, that's once some certain facts have developed, and I think facts as to just what her, or a decision as to just what her authority was in actuality and what was delegated to her needs to be decided first. I see that I'm over my time, and I filed a, if I may quickly state, I had the luxury of the Anderson decision coming out before I filed my reply brief. Mr. Harreld did not before he filed his opposition. I did file a motion for judicial notice. It was unopposed. I don't know what Mr. Harreld has to say about the effect of Anderson on this case. And I was hoping to save time to rebut whatever he might say, if the court will allow me to. Well, let's keep ready set. Sure. I may not need to come back. Needs rebuttal. Maybe he'll say the case needs to go back. Your Honors, good morning. Shel Harreld for the County of Orange. There is a paucity of law in this circuit and elsewhere on what happens when peace officers are laid off. Because speaking for Orange County, it never happened until 2008 and 2009. And there wasn't a well-established procedure or really much of anything in terms of a track record on what you do to cut $24 million from the Orange County Sheriff's Department. And it was initially the sheriff's call. And in terms of guidance, she had county counsel that she has on speed dial that was available. And the layoff letter was drafted. And she did look and see, are there any performance problems? Are there any easy calls here for me to make? Is there any punitive action that I can make now to help save costs? Excuse me, counsel. Are you making a concession here that the sheriff, for the purpose of determining these layoffs, was the policymaker as to who should be laid off? Your Honor, absolutely not. And we had a full trial on the merits. It was one day. But plaintiffs had an opportunity to voice all the points that they made here. This is the way that the facts should be read. These are the factual conclusions that you, the trial court, should draw. And they had their day. And they made their point. What did the district court do? Did the district court find that Hutchins was not a final decision maker or that she was not a final policymaker? Your Honor, the— Because it never uses the term policy in its entire decision. Your Honor, the call that the trial court had to make was, was there some type of action by the county that was unconstitutional? And the only way that the county, being an inanimate object, can act is through its final policymaker. And the evidence was overwhelming. The plaintiff didn't even take the stand. The evidence was overwhelming from every stakeholder in the process, including the PSR, including the sheriff, including the human resources manager for the county of Orange, that the final call on who stays and who goes with regard to Orange County Sheriff's Department employment, whether it's a layoff, whether it is a punitive action, regardless of the reason, it all goes to Carl Crown, who is the human resources manager for the county. The sheriff has a great deal of power, an abundant amount of power. Do we carry guns? What type of patrols do we make in various parts of Orange County? I would say there's overwhelming evidence, but wasn't the district court required to ask whether Hutchins possessed the authority to set policy for hiring or firing? Because I don't see where the court answered that question. Your Honor, the question was answered. Where? When? In a lengthy ruling from the bench that he had heard the evidence. Did he ask the question of Hutchins? A plaintiff's counsel asked the questions of Hutchins, and the judge sat and listened. And then the judge made his ruling at the close of the evidence that it was clear under the PSR, under the version of events that we got from Carl Crown, the human resources manager, under the version of events that we got from Sheriff Hutchins. Sheriff Hutchins has a great deal of power at the Orange County Sheriff's Department. She is the sheriff. But at Orange County, under the PSR, which is basically the bargaining agreement that the plaintiff in this case agreed to, she had the right and the responsibility if she didn't like something that happened to her at the Orange County Sheriff's Department for her to grieve it to a final policymaker as regards employment policy for the County of Orange, who is Carl Crown. So where in the PSR does it grant or delegate policymaking authority to Hutchins? Where? Is that what you said? It's in the PSR? Right. It grants policymaking authority with regard to employment with regard to employment to the human resources manager, who is not Sheriff Hutchins. What was the evidence as to whether Sheriff Hutchins consulted with the human resources director as to who would be fired or laid off? The evidence, there is no evidence that Carl Crown, the human resources manager for Orange County, had any input or any role in that call. That was her call, subject to any grievance by a plaintiff up the chain of command that was available to her such that a final policymaker of the County of Orange could make the call and whether or not she was going to maintain her employment there. That was evidence from everyone. So what would be the nature of the grievance claim under circumstances like this? Could the plaintiff try to argue that this large layoff is a pretext for retaliation? Would that be an available claim that could be taken to the human resources director? Your Honor, we will never know. The plaintiff never took the stand at trial, and there is absolutely no evidence from the plaintiff as to what she would have said or why she would have said it. I'm asking you, would that have been within, if we want to use the jurisdiction of the human resources director, to consider that kind of claim? Absolutely. Carl Crown said on the stand his door is always open for any employee of the county, any peace officer of the county, to come in and say whatever is on their mind. Time limits don't even matter to him. Come in and let me know what's going on with employment, and let's see if we can fix it. He had an open door there, and there has been substantial talk on the other side about what might have happened and what could have happened. At trial, that was plaintiff's opportunity to get up on the stand and say, listen, this is what I would have said to Carl Crown had I gone, and she never got on the stand. I still don't understand your argument. It's well established, first of all, that we don't just look at the ordinance or the statutes. We also look to various factual issues to determine whether a subordinates decision is subject to review by the municipality's authorized policy makers. So in this case, what you're saying is although Sheriff Hutchins was free to lay off anybody for any reason, they should have gone to the HR person to. I am saying as the trial court found, Your Honor. The trial court applied the wrong standard. He only considered what the ordinances said and who held what job. He didn't consider the reality of the operations in the sheriff's department, which he needed to do. Your Honor, I believe that. And he also called the sheriff and said that the human resources manager was the final decision maker. He didn't make a finding as to final policy maker. Your Honor, there may have been some interchange and interplay of those terms. No. There was one colloquy where someone said, no, Your Honor, you have to find who was the final policy maker. He said, no, I have to find who's the final decision maker. So he knew there was a distinction in those words, and he applied the wrong standard. Your Honor, if it were to go back for a remand based on the record here, what possible new or different evidence are plaintiffs going to show the trial court that would matter under any standard? The people that run Orange County with regard to employment were on the stand saying it's me. I am the person. What is going to trump that? Operational evidence is to the operational reality that they delegated her the authority. She used the term layoff, so there was no ground for a grievance. I mean, there's all sorts of facts. You know, the Anderson case is proceeding right on that. Your Honor, the Anderson case is not Section 1983 with great respect. It is a POBRA case, pure and simple. And I did want to address the Anderson case briefly. First of all, as I have been told in this very courthouse, the California Court of Appeal does not hold sway here. So that's the first thing I wanted to say. The second thing is that it does not hold sway here, particularly since the opinion turned on, we're going to send this case back for a trial because, in our view, the letter that the county wrote, the layoff letter that was written, did not adequately explain to plaintiffs their right to a full evidentiary hearing, that there is evidence that maybe that that was not known to them, and that the county should have done a better job of explaining the remedies that the plaintiffs had under POBRA. They cite nothing for that because, again, we're on uncharted ground here with regard to what happens when there are layoffs, based on the budget of officers. But the Anderson court analogized their ruling to the 14th Amendment due process clause, and any pronouncements by the California Court of Appeal certainly are not binding in this courthouse with regard to the 14th Amendment. And I do have some case sites that I do believe will be of assistance to the court with regard to this. They are contained in the City of West Covina v. Perkins. It's a U.S. Supreme Court case, 525 U.S. 234. Counsel, could you write down your case site? Of course. Yeah, right after argument and hand it to the clerk so we can take a look at those cases. Your Honor, of course. This is a 1999 case. But what it says in sum and substance is that the due process clause does not require the government to explain rights and remedies to the citizens that live in our system. That laws are on the books. They're there for anybody that can read them, and there are no shortage of lawyers that can assist anybody that has a grievance. It's not the county's responsibility to write a letter and say this is not a budgetary, this is a budgetary layoff. You've done nothing wrong. But if you believe that we're not being honest, these are your remedies. Where does that lead us as a society? How does the government have to change its way of communicating with individuals? Counsel, let's just perhaps talk about POBRA itself. If you're a police officer covered by POBRA, you are dismissed for what are said to be budgetary reasons, and you believe that, in fact, you're being retaliated against for your exercise of a First Amendment right, and you then demand an administrative hearing, whatever form that is supposed to take, what is the response in this case of the county supposed to be? Are they entitled to just say, no, no, you were not dismissed for retaliatory reasons. We're not going to grant you an administrative hearing. Can they do that? Your Honor, the evidence in the record before the court is that that's not what they would have done. Well, they offered this liberty interest hearing, and Anderson makes it very clear now that's not enough. And they made very clear that that liberty interest hearing was not going to be an evidentiary hearing. How could you establish your claim that the real motive for the layoff was retaliatory without presenting evidence of some kind? I mean, it was clear from the way the county portrayed that hearing this was going to be a futile event. Nothing could happen. Your Honor, with respect, the evidence from Carl Crown that is in the record, particularly with regard to the summary judgment that was granted was, yes, we did respond and say no witnesses are needed, but at that time my only knowledge of the situation was that there was a budgetary shortfall and witnesses would not be of benefit to me. If she just wanted to come over and say it's so sad that we don't have the money, I don't need any witnesses to hear about that. If I had known, and this is what Carl Crown says, the human resources manager, if I had known all the things that she says now, most of which predate her layoff and were known to her at that time, if I had heard those things, my practice would have been to call the county council and say what do I do to be fair? And so in the Anderson case, what we are looking at literally, we are going to go back and have a bench trial in front of the trial court there, and in observance of the Court of Appeal, our intention on June 15th, which is our trial date, is to put on witnesses from the county that say hypothetically what they would have done. And we're going to bring over Carl Crown that's going to say exactly what he said to the trial court in this case. We are going to bring over a county council that's going to say – To follow up on Judge Wardlaw's question, suppose at that trial the trial court makes the determination that this was a pretextual layoff, that there was a punitive purpose at work here. Does that mean that the county is lost, or is that a finding that's just preliminary to sending it back for some kind of administrative hearing? Your Honor, there would still be a secondary finding that would need to be made before there was a finding that POBRA had been violated, and that is the trial court would need to additionally find that plaintiffs, in the Anderson case or Ms. Murray, were not offered the opportunity for an administrative hearing. It does not matter that she did not go. All we had to do was give her the opportunity, and our argument to the Anderson court is going to be we most certainly did. Let me – can I just follow up on another question? Of course. The question that Judge Wardlaw asked you, wasn't the district court required by little to analyze whether the HR director was a final policymaker? Your Honor, I believe that the record shows that it did. Where did the record show that? Your Honor, as Judge Wardlaw noted, there may be some interplay of the terms. Let's just say, if we were to decide that the district court erred by not asking whether Hutchins was a final policymaker, should we decide that question on the record before us, or do we remand that? Your Honor, I believe plaintiffs themselves said that they would like another opportunity for a trial. I'm asking you. Yes. Your Honor, if the court thinks that the wrong standard was applied, I think that we need a trial using the correct standard. So the answer is we would remand? Yes, for use of the correct standard. Thank you. Yes, I see that my time has expired. Your Honor, thank you. Thank you. I'll give you a minute to respond. You did add some additional, in particular, how it distinguishes Anderson based on the fact that it's only an alleged POBRA violation, not a Section 1983 action. Sure. Also, I was looking through the trial transcript, as the colloquy, Your Honor, with Mr. Harrell was going on, about what was the issue with the trial court. And in the opening statement, Mr. Watkins, who is Mr. Harrell's partner, says, in the record, page 22-10, lines 12 through 18, the question becomes, when the sheriff chose to make layoffs to accomplish a budget reduction, is that the end of the matter in Orange County? Because if it is, then her decision is properly a basis for Monell liability. That's the county's counsel making that concession at page 22-10 of the record. I think the Anderson decision really is law of the case in this matter. The county directed the trial court to the Anderson decision when it was before the Superior Court's decision in Anderson. And it was all fine and well then for the county when the decision was in its favor. And now that the decision has been reversed on appeal, I don't see why the county now gets to disavow the same case that it relied upon when it was in its favor. I also think that if you're offered an administrative appeal that does not comport with the one that you were required to be afforded, there's no need to exhaust it. It's basically an inadequate remedy. If they say, you can go stand on the corner and shout out your problems, you don't have to do that in the hope that maybe it will lead to this very concrete, defined, evidentiary hearing, particularly when you've already been told there will be no witnesses. And I think Mr. Harrell's point of, I don't see the need for witnesses, I think it was Carl Crown that was saying when this is just a layoff, kind of highlights the problem. He's saying it's just a layoff. Assuming this is a pretext. Because that's what the sheriff said it was. Because that's what the sheriff said it was. Assuming this is a pretext, the sheriff led them down that path. Now the sheriff wants to say, you should have figured it out and asked for the right hearing, assuming that we did the wrong thing. Now imagine if that was what they were supposed to do. I think the county would be just as unhappy with that type of requirement. Is Sheriff Hutchins still the sheriff? Yes. I believe so. Yes. Okay. Thank you. Thank you. Murray v. County Board will be submitted.
judges: Lipez, Wardlaw, Murguia